**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **MOHAMED FARVARDIN,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **NO. 12-6680** |
| | : | |
| **TPR. MICHAEL SANTOS, et al.,** | : | |
| **Defendants.** | : | |
| _____ | : | |

**Memorandum Opinion**

**Rufe, J.**                                                    **October 21, 2014**

        Before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction, an issue first raised by Defendant at the close of Plaintiff's evidence at trial,[1] and briefed for the Court at the close of evidence for both parties. Only one count of Plaintiff's complaint is currently pending before the Court, as Plaintiff settled his claims for monetary damages prior to trial. The remaining claim contains Plaintiff's request for injunctive relief against Defendant Commissioner of the Pennsylvania State Police Frank Noonan, whom Plaintiff alleges failed to properly train, educate, or correct violations of law. Defendant argues that the Court does not have jurisdiction to hear the claim for injunctive relief under Article III of the Constitution, as Plaintiff has failed to establish a live case and controversy. The Court will decide only the issue of its jurisdiction in this opinion; its findings of fact and conclusions of law will be set forth in a separate opinion.

**Background**

        The Court writes primarily for the parties, who are familiar with the facts of the case.

_____

        [1] Because neither party requested a trial by jury, and because solely injunctive relief is at issue, the Court held a bench trial on August 5 and 6, 2014.

However, the Court will briefly summarize the case to provide context for its opinion. On October 28, 2011, Plaintiff, a professional man in his 60s, of Iranian descent, who speaks English with a foreign accent, pulled his car well off the road and parked it to take a business call. While he was parked and speaking on the telephone, Pennsylvania State Trooper Sromovsky pulled up behind him and approached him to check on his well-being. After observing that he was in good health, Trooper Sromovsky demanded that Plaintiff end his telephone call, step out of the car, and produce identification. Plaintiff initially refused to produce his identification, citing a lack of any legal basis for the demand, and opining that he was only being asked for it because of his foreign accent. After being threatened with arrest if he did not show the trooper his identification, Plaintiff threw his driver's license on the ground rather than handing it to him. Trooper Sromovsky and a second trooper proceeded to throw Plaintiff down on the pavement, handcuff him, and push his face into the ground. Subsequently, the troopers arrested Plaintiff, charging him with resisting arrest and disorderly conduct. The Chester County District Attorney declined to prosecute those charges.

Plaintiff then filed a civil rights complaint against the state troopers involved in the incident and against Commissioner Noonan. Prior to trial, Plaintiff settled his claims against the state trooper defendants for monetary damages. At trial, the Court heard evidence regarding Plaintiff's remaining claim against Commissioner Noonan for failure to train, educate, and correct violations of law, pursuant to 42 U.S.C. § 1983, for which Plaintiff is seeking injunctive relief. Specifically, Plaintiff has asked the Court to order improved training for lawful police conduct in mere encounters, and to require implementation of new monitoring and audit procedures for review of both substantiated and unsubstantiated Internal Affairs Division investigations.

2

**<u>Discussion</u>**

In an earlier-filed motion for summary judgment, all Defendants argued that Plaintiff had not put forth evidence of any continuing violation of federal law, and therefore he was not entitled to the injunctive relief he sought under *Ex parte Young*.[2] The Court disagreed, finding that Plaintiff had put forth sufficient evidence to create a genuine issue of material fact as to whether Defendants were engaging in ongoing violations of federal law by failing to adequately train prospective troopers regarding the constitutional constraints on the use of police authority and force in different types of encounters with citizens.[3]

At the close of Plaintiff's evidence at trial, Defendant raised substantially the same argument, but framed it as an issue of Article III jurisdiction over Plaintiff's claim for injunctive relief. Specifically, Defendant argued that there is no longer a case and controversy before the Court, as Plaintiff has not demonstrated that the problematic police conduct at issue is realistically likely to be repeated, such that he has a personal stake in the prospective injunctive relief he seeks. In support of the argument, Defendant cites *City of Los Angeles v. Lyons*.[4] In *Lyons*, a plaintiff had been subjected to a chokehold by a police officer during a traffic stop, and was seeking an injunction barring the use of chokeholds by Los Angeles police officers. The Supreme Court reasoned that "absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles" and held that the federal court was without jurisdiction to entertain Lyon's claims.

In *Lyons*, the plaintiff sought a ban on a police practice. In this case, Plaintiff is seeking

---

[2] 209 U.S. 123, 159-60 (1908).

[3] Order dated March 17, 2014 (Doc. No. 19) at 5-6.

[4] 461 U.S. 95, 101 (1983).

3

improved police training on mere encounters. The Court applies the rule set forth by the majority in *Lyons* to the facts in this case. In order to establish the Court's jurisdiction over Plaintiff's claims for injunctive relief, Plaintiff would need to establish that he was likely to have another mere encounter with state troopers, and that 1) all state troopers are inadequately trained to distinguish between mere encounters and investigatory stops and are likely to overstep the limits on their authority during a mere encounter; or 2) that the commissioner authorized troopers to act in such a manner.[5]

The Court is satisfied that Plaintiff is likely to have another mere encounter with state troopers, as he testified that it is his typical practice to pull off the road during all telephone calls, and this (legal) practice, while using the roadways of Pennsylvania, where he lives and works, may lead to repeated mere encounters with state troopers. The Court also finds it likely that Plaintiff will again (justifiably) assert his constitutional right to refuse to provide identification in such an encounter. In *Hernandez v. Cremer*,[6] the Fifth Circuit distinguished *Lyons* on the basis that the plaintiff in *Hernandez* had engaged in legal, not illegal activity, protected by the constitution, when he was subjected to wrongful treatment by the INS, and he was reasonably likely to engage in that legal activity again. Similarly, here we have legal activity which is reasonably likely to be repeated.

With regard to the likelihood that other state troopers will disregard Plaintiff's constitutional right not to cooperate during a future mere encounter and act outside the limits of their authority, the Court finds that if the state troopers, as a group, are inadequately trained, as Plaintiff has alleged, there is a realistic risk that they will overstep their authority in another mere encounter. At trial, Plaintiff put forth evidence that the two troopers and one superior officer on

---

[5] *Id.* at 105-06.

[6] 913 F.2d 230, 235-36 (5th Cir. 1990).

the scene failed to understand his rights and the limits of their authority during his encounter with them. None of those individuals was disciplined or provided with additional training in the aftermath of the incident. More importantly, with respect to the threat of future injury, the Court heard testimony from Philip Duffy, a sergeant and supervisor of the Criminal Law Unit of the Pennsylvania State Police Academy. He is one of the certified instructors at the Pennsylvania State Police Academy. Among other topics, he provides instruction to prospective troopers on the distinctions between mere encounters, investigative stops, and custodial arrests. He testified that all instructors use the same materials and standards in teaching cadets.[7] This officer testified that he viewed the encounter with Plaintiff as occupying some grey area between a mere encounter and an investigative stop,[8] although the trooper was not called to the scene in response to a report of criminal activity, but rather to check on the safety of Plaintiff. This confusion regarding the rights of citizens and the authority of troopers in such a situation, expressed by a person responsible for the training of prospective state troopers, is sufficient to establish a realistic threat that Plaintiff, while acting lawfully, may encounter a similar problem with state troopers in the future.[9]

Thus, the Court holds that in requesting prospective relief, Plaintiff has met the three requirements for Article III standing.[10] He has put forth evidence of both an actual injury in the past and a realistic likelihood that he will suffer state troopers overstepping their authority in future mere encounters; he has established a causal connection between the conduct complained of and the injury to his rights; and he has demonstrated the likelihood that a favorable decision,

---

[7] Aug. 6, 2014 Tr. at 10.

[8] Aug. 6, 2014 Tr. at 16.

[9] *See Hernandez v. Cremer*, 913 F.2d 230, 235-36 (5th Cir. 1990).

[10] *See Rosembert v. Borough of East Lansdowne, 2014 WL 1395032*, at *10 (E.D. Pa. April 9, 2014).

requiring improved trooper training, will redress the injury.

Plaintiff has also requested injunctive relief in the form of a monitoring or audit procedure for Internal Affairs Division investigations. Because a modified monitoring or audit procedure may be necessary to ensure that any modification in trooper training is effective, the Court holds that it also has jurisdiction to hear Plaintiff's request for an order requiring reform of the Internal Affairs investigative process.

Accordingly, the Court holds that Mr. Farvardin has met his burden to establish Article III standing with regard to his request for injunctive relief.

An appropriate order follows.